Bruce C. SCALAMBRINO, Carole K. Towne, Claudia Langman, Thomas W. Hayes, Diana Rigas, Wilson Troup, Steven Vargas, Nancy Vargas, Lorna Chronis, Bunny Fisher, David Heckman, and Paul Parenteau, Appellants–Plaintiffs,

v.

TOWN OF MICHIANA SHORES, Joan Lewis, in her individual capacity and her representative capacity as Michiana Shores Town Council President, Jean V. Poulard, in his representative capacity as Michiana Shores Town Council Vice President, Richard Pliske, in his representative capacity as Michiana Shores Town Councilman, Richard Young in his individual capacity and in his representative capacity as Michiana Shores Town Councilman, Steve Millick, in his individual capacity and in his representative capacity as Michiana Shores Clerk/Treasurer, Robert Horning, in his representative capacity as Michia-

---

na Shores Building Commissioner, John Bauer, in his representative capacity as Michiana Shores Assistant Building Commissioner, T–Mobile Central, LLC and T–Mobile USA, Inc., Appellees–Defendants.

No. 46A03–0807–CV–342.

Court of Appeals of Indiana.

April 20, 2009.

Matthew J. Hagenow, Newby, Lewis, Kaminski & Jones, LLP, La Porte, IN, Attorney for Appellants.

Jeffrey F. Gunning, Pinkerton and Friedman, P.C., Munster, IN, Attorney for Appellees Town of Michiana Shores, Joan Lewis, Jean V. Poulard, Richard Pliske, Richard Young, Steve Millick, Robert Horning and John Bauer.

F. Joseph Jaskowiak, Kevin G. Kerr, Hoeppner Wagner & Evans LLP, Valparaiso, IN, Attorneys for Appellees, T–Mobile Central, LLC and T–Mobile USA, Inc.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Bruce Scalambrino and the other town-resident plaintiffs appeal the trial court's entry of summary judgment on counts I through IV and VI of their second amended complaint in favor of Michiana Shores ("the Town") and T–Mobile.[1] Scalambrino raises a single issue for our review; whether the trial court erred when it entered summary judgment in favor of T–Mobile and the Town. Concluding that the Town validly authorized the site lease and amended its zoning ordinance and zoning map to allow for the construction of the cell tower, we affirm.

Facts and Procedural History[2]

In early 2006, T–Mobile approached the Town about the possibility of locating a cell tower on Town-owned property. On August 20, 2006, T–Mobile submitted a proposed site lease for property located at 513 El Portal Road near the town garage ("the Property"). On September 1, 2006, T–Mobile requested that the Town sign an authorization agreement to allow T–Mobile's architects and engineers to enter the Property to begin preparing a design for the proposed cell tower. On October 10, 2006, the Town Council met and apparently authorized the Town to enter into a site lease by a simple vote. On October 12, 2006, T–Mobile applied for a building permit for the construction of the cell tower. The following day, the Town requested a variance from the zoning ordinance to allow the construction.

The Town apparently realized that it had not followed the proper statutory procedures required to lease municipal property. As a result, the Town began taking the necessary steps to comply with the statutes. At the November 14, 2006, Town Council meeting, the Town passed Resolution 2006–02. The resolution authorized the Town to proceed under Indiana Code section 36–1–11–12, the alternate request for proposals procedure, rather than section 36–1–11–10, the normal bidding procedure. The resolution was made retroactively effective to November 1, 2006. On November 6, 2006, the building commissioner issued an opinion letter, which seems to state that the cell tower would not violate the existing zoning ordinance.

---

1. Many individuals and entities are listed as parties to this action. Therefore, for the sake of clarity, we refer to "Scalambrino" when referring to the collective plaintiffs and the "Town" when referring to the collective municipal defendants.

2. We heard oral arguments on March 5, 2009, at the Hammond City Hall. We thank counsel for their advocacy and extend our appreciation to Mayor Thomas McDermott and the City of Hammond for its hospitality.

On October 31, 2006, the Town sent T–Mobile notice of a public hearing, to be held during the November 14, 2006 Town Council meeting, on the issue of leasing property for the construction of a cell tower. On November 2, 2006, the Town published notice of the public hearing in the local newspaper. On November 3, 2006, the Town published a notice of request for proposals for a site lease agreement for the purpose of constructing a cell tower. The Town published a second notice of request for proposals on November 11, 2006.

At the Town Council meeting, the Town accepted T–Mobile's proposed site lease agreement as the only proposal submitted. The following day, the Town signed the site lease and the building commissioner issued a building permit for the construction of the cell tower. On December 12, 2006, the Town signed an addendum to the site lease. T–Mobile, however, did not sign the site lease until February 28, 2007.

On December 15, 2006, Scalambrino filed his initial complaint including four counts: (I) request for a temporary restraining order ("TRO") preventing the construction of the cell tower; (II) request for a preliminary injunction for the same purpose; (III) request for a declaratory judgment that the construction of the cell tower violates the Town's municipal code and is prohibited; and (IV) request for a permanent injunction preventing the construction of the cell tower or any other structure that violates the Town's municipal code. That same day, the trial court held a hearing on and denied Scalambrino's request for a TRO. On December 29, 2006, the trial court ordered T–Mobile to be joined as an indispensible party to the complaint, and on January 17, 2007, Sca-lambrino filed his first amended complaint adding T–Mobile as a defendant.

Around March 26, 2007, the Town sent notice of a Plan Commission meeting, to be held on March 31, 2007, to consider amendments to the zoning ordinance and zoning map. The Town mailed notices to all landowners adjacent to the properties at issue and published notice of the meeting in a town newsletter mailed to all residential home-owners. On March 31, and April 3, 2007, the Plan Commission held public hearings on Ordinance 2007–02, an amendment to the zoning ordinance to create a governmental zone, and Ordinance 2007–03, an amendment to the zoning map to create a governmental zone. Following the public hearing, the Plan Commission approved the two ordinances and certified them to the Town Council.

The Town Council met on April 10, 2007 and passed both ordinances on first and second readings. Subsequently, the Town Council enacted the ordinances at its May 8, 2007 meeting. On May 18, 2007, with leave of the trial court, Scalambrino amended his complaint in light of the new ordinances adding count V, alleging impermissible use of public funds,[3] and count VI, requesting a declaratory judgment that Ordinances 2007–02 and 2007–03 are illegal and void.

On December 14, 2007, T–Mobile filed a motion for summary judgment, which the Town joined on February 1, 2008. The trial court held a hearing on the motion on April 4, 2008 and granted summary judgment in favor of the Town and T–Mobile on counts I, II, III, IV, and VI on June 20, 2008. Scalambrino now appeals.

*Discussion and Decision*

I. Standard of Review

When reviewing a trial court's entry of summary judgment, we are bound by the

---

3. This count of the complaint refers to an incident completely unrelated to the construc- tion of the cell tower and is not at issue in this appeal.

same standard as the trial court. *Plaza Group Props., LLC v. Spencer County Plan Comm'n,* 877 N.E.2d 877, 884 (Ind. Ct.App.2007). Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The moving party bears the burden of making a prima facie showing that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. *Plaza Group,* 877 N.E.2d at 883–84. A factual issue is genuine when it is not capable of being conclusively foreclosed by reference to the undisputed facts and is material when its existence facilitates the resolution of an issue in the case, *Id.* All facts alleged by the nonmoving party must be accepted as true and all evidence construed in its favor. *Id.* However, the trial court's decision to grant a motion for summary judgment comes to us cloaked with a presumption of validity and the appellant has the burden of persuading us that the decision is erroneous. *Id.*

## II. Issues Decided on Summary Judgment

Counts I through IV of Scalambrino's second amended complaint address the Town's actions in entering into a site lease with T–Mobile for the purpose of constructing a cell tower. Count VI, on the other hand, addresses the validity of the zoning ordinance amendments. We address the site lease and the zoning amendments separately below.

### A. Site Lease

A town council may lease property rather than sell, transfer, or exchange it if it determines that a lease is in the best interest of the town. Ind.Code § 36–1–11–10. Normally, the process of leasing property involves having the property appraised and accepting bids from prospective lessees. *See id.* However, a town council may choose the alternative, request for proposals method if it makes a written determination that the use of the bidding process is not feasible. Ind.Code § 36–1–11–12. The written determination must include the town council's reasons for determining that the bidding process is not feasible. *Id.*

The request for proposals must include all of the following:

(A) The factors or criteria that will be used in evaluating the proposals, including a statement that:

(i) the property may not be leased to a person who is ineligible under section 16 of this chapter [4]; and

(ii) a proposal submitted by a trust (as defined in IC 30–4–1–1(a)) must identify each beneficiary of the trust and each settlor empowered to revoke or modify the trust.

(B) A statement concerning the relative importance of price and the other evaluation factors.

(C) A statement concerning whether the proposal must be accompanied by a certified check or other evidence of financial responsibility.

(D) A statement concerning whether discussions may be conducted with the offerors for the purpose of clarification to assure full understanding of, and responsiveness to, the solicitation requirements.

*Id.* The town council must also publish notice of the request for proposals in ac-

---

4. Indiana Code section 36–1–11–16 makes a person, or such person's agent, who owes delinquent taxes, special assessments, penalties, interest, or costs directly attributable to a prior tax sale on a tract of real property for which property taxes are or were delinquent ineligible to submit a proposal.

cordance with Indiana Code chapter 5–3–1. *Id.*

### 1. Statutory Requirement to Lease Property

■ The Town's initial authorization of the site lease by a simple majority vote did not comply with either statutory procedure. The Town apparently recognized this fact and passed Resolution 2006–02, which states: "Indiana State law provides for a specific manner in which a lease may be devised ... and ... the Town ... desires to be in compliance with all applicable laws." Appellant's Appendix at 467. Resolution 2006–02 is a retroactive attempt to comply with the statutory procedure for leasing property by authorizing the alternative request for proposals leasing process. Prior to enacting Resolution 2006–02, the Town began fulfilling the requirements of Indiana Code section 36–1–11–12, by sending notice of the public hearing to T–Mobile, an interested party, publishing notice of the hearing, and publishing two notices of the request for proposals. At the November 14, 2006 meeting, the Town Council enacted Resolution 2006–02, authorizing the Town to take the steps above, and made the resolution retroactively effective to November 1, 2006.

In order to lease town property using the request for proposals procedure, the Town had to, first, determine that leasing the property would be in the best interests of the Town and, second, make a written determination, including its reasons, that the bidding procedure is not feasible. *See* Ind.Code §§ 36–1–11–10, –12. Resolution 2006–02 fulfills both requirements. The resolution describes the economic opportunity presented by T–Mobile's proposed site lease, the risk that T–Mobile will withdraw its request and locate the cell tower in another town, the cost and length of time required to comply with the bidding procedure, and the fact that T–Mobile's initial offering for rent is higher than that paid to other municipalities with free standing cell towers. The resolution then authorizes the Town to utilize the request for proposals procedure retroactive to November 1, 2006.

### 2. Notice Requirements

■ The Town published notice of the public hearing twelve days prior to the hearing. Indiana Code section 5–3–1–2(b) requires the Town to publish notice of a public hearing one time, at least ten days before the date of the hearing. The Town clearly complied with this requirement. Scalambrino complains that the Town did not provide effective notice because it did not mail notice directly to the town residents or take into account that many residents live outside of the town for much of the year. However, the statutes do not require such notice for a public hearing in this context and Scalambrino has supplied no authority for such a requirement. Therefore, we see no difficulty with the Town's notice of the public hearing to consider the site lease proposals.

■ The Town published notice of the request for proposals eleven days and three days prior to the deadline to submit proposals. Both notices contain all of the statements required by Indiana Code section 36–1–11–12. However, it is not clear whether the notices were timely because two separate sections of the notice statute could apply in this case.

Indiana Code section 5–3–1–2 contains notice requirements for various events including: public hearings or meetings; elections; sales of bonds, notes, or warrants; receiving of bids; establishment of or submission of a proposal for a cumulative or sinking fund; and publication of an ordinance. Indiana Code section 5–3–1–2(e) states: "If the event is the receiving of bids, notice shall be published two (2)

times, at least one (1) week apart, with the second publication made at least seven (7) days before the date the bids will be received." In addition, the statute contains a catch-all alternative which states: "If the event is anything else, notice shall be published two (2) times, at least one (1) week apart, with the second publication made at least three (3) days before the event." Ind.Code § 5–3–1–2(j).

The notice for proposals statute refers generally to Indiana Code chapter 5–3–1 rather than specifically section 5–3–1–2(e). See Ind.Code § 36–1–11–12(2). In addition, Indiana Code section 5–3–1–2(e) explicitly states that it applies to "the receiving of bids" but makes no mention of requests for proposals. "We apply the well-established statutory construction maxim expressio unius est exclusio alterius, which means that the enumeration of certain things in a statute implies the exclusion of all others." Conseco Fin. Servicing Corp. v. Friendly Vill. of Indian Oaks, 774 N.E.2d 87, 98 (Ind.Ct.App. 2002). The legislature had the ability to specifically include requests for proposals in the notice statute, either in the receipt of bids provision or as a separate provision. Similarly, the legislature could have referred directly to the notice for receipt of bids provision in the request for proposals procedures. In light of the absence of an express enumeration of the request for proposals procedure, we must assume that it falls into the "anything else" category of the notice statute. Therefore, the Town was only required to provide the second notice within three days of the deadline to submit proposals, and it complied with this requirement.

3. Conformity of Cell Tower with Pre–Amendment Zoning Ordinance

■ Scalambrino's primary argument against the site lease is that it should be prohibited because construction of the cell tower would violate the zoning ordinance as it existed when the Town authorized the site lease. Prior to the zoning amendments discussed below, the property in question was located in the business zoning district. The zoning ordinance restricts buildings in this district to a height of one story and no more than thirty-five feet and accessory structures to a height of ten feet. Municipal Code § 2–2–4–4, Appellant's App. at 103. Permissible uses for buildings in the business zoning district are:

> Store for the sale of goods at retail, Store for providing services that are of daily necessity to the community, Office facilities for banks, businesses or professionals, Restaurant, cafe or other places serving food, provided that the serving of food is confined to the interior of the Structure and no alcoholic beverages are served, Structures necessary to the housing of governmental functions, Antique and second hand merchandise shop, Bakery, Book and stationery store, Grocery store, Hardware store, Jewelry store, Meat and fish store, Radio, television and music service and sales, Real Estate office, Shoe store, Sporting goods store, Riding Stables providing related services including horseback riding, riding instruction, boarding and training of horses, conducting horse shows and selling of riding apparel and equipment.

Municipal Code § 2–2–4–2, id. A cell tower would almost certainly exceed thirty-five feet in height and it is questionable whether the provision for radio, television, and music service and sales includes a cell tower; thus, it is unlikely that the cell tower would comply with the zoning ordinance as it existed prior to the amendments below. This view is confirmed by the Town because it applied for a variance to allow construction of the cell tower.

Nonetheless, the building commissioner issued an opinion letter, which seems to find that the construction of the cell tower would not violate existing zoning, stating:

> [Illegible] the business section of the CODE known as Title 2, Article 2, Chapter 4, Paragraph 2. [P]ermitted uses are . . ., Radio, television and music service and sales, [t]his statement allows the business to exist as requested.
>
> [Illegible] the business section of the CODE known as Title 2, Article 2, Chapter 4, Paragraph 3 a. [T]his statement allows the tower to exist as an accessory use.
>
> [Illegible] the business section of the CODE known as Title 2, Article 2, Chapter 4, Paragraph 4. [T]he proposed building is within the height restrictions of the CODE. The height of the tower, an accessory to the building is not addressed. There is no reference to a tower with the business CODE, and as a tower is not a building by definition [sic], I see no reason to address this issue.

Appellant's App. at 472.

Scalambrino provides no authority for his argument that the lease is prohibited because the intended use of the property violates the zoning ordinance. In addition, because we decide below that the Town passed valid zoning ordinance amendments that allow the construction of the cell tower, the issue is moot. *See, e.g., State ex rel. Cittadine v. Ind. Dep't of Transp.,* 790 N.E.2d 978, 984 (Ind.2003) (where statute was amended removing the provisions sought to be enforced, claim was moot); *Div. of Labor of Dep't of Commerce and Indus. of Ind. v. Indianapolis News Publ'g Co.,* 109 Ind.App. 88, 32 N.E.2d 722 (1941) (where issue on appeal involved application of child labor statute to newspaper carriers, amendment of statute to exempt newspaper carriers rendered issue moot).

Although the Town's initial attempt to authorize the site lease was invalid, the Town subsequently authorized the site lease pursuant to proper statutory procedures. In addition, the Town sufficiently complied with the notice requirements. Therefore, we hold the Town's authorization of the site lease is valid.

### B. Zoning Ordinance Amendments

■ Indiana Code sections 36–7–4–602 et seq. govern the amendment of a zoning ordinance and zoning map. A plan commission must take several steps prior to enacting such amendments, including providing notice of and holding a public hearing and certifying the proposal to the Town Council. *See* Ind.Code §§ 36–7–4–604 and –605. The Town Council must also take several steps including holding a second public hearing and voting to adopt, reject, or amend the proposed amendment. *See* Ind.Code §§ 36–7–4–607 and –608.

#### 1. Notice Requirements

■ Indiana Code section 36–7–4–604(b) requires the plan commission to give notice of a public hearing on proposed amendments to the zoning ordinance by publishing notice one time, at least ten days before the date of the hearing. The plan commission must also provide specific notice to interested parties at least ten days before the hearing. The plan commission mailed letters to the adjacent property owners and published notice of the hearing in the town newsletter on March 26, 2007. The plan commission held the hearing on March 31 and continued the hearing until April 3.

Based on the date of March 26, the plan commission did not comply with the notice requirements because it provided notice only five days prior to the hearing. Even assuming that no discussion of the amendments occurred until April 3, the plan com-

mission still provided insufficient notice. However, Indiana Code section 36–7–4–604(e) states that a "zoning ordinance may not be held invalid on the ground that the plan commission failed to comply with the requirements of this section, if the notice and hearing substantially complied with this section." In addition, Scalambrino failed to argue any deficiencies in the notice of the plan commission hearing. Therefore, the notice supplied by the Town substantially complies with the notice statute.

### 2. Statutory Requirements to Amend the Zoning Ordinance

The Town otherwise complied with the statutory requirements prior to amending the zoning ordinance, Ordinance 2007–02, and zoning map, Ordinance 2007–03. The plan commission held a public hearing and voted to accept the amendments and certify them to the Town Council. The Town Council voted on first and second readings of the amendments at its April 10, 2007 meeting and enacted Ordinances 2007–02 and 2007–03 at its May 8, 2007 meeting. Therefore, the ordinances are procedurally valid.

### 3. Scalambrino's Challenges to the Ordinances

Scalambrino raises two substantive challenges to the ordinances: that the Town Council acted with an improper motivation in enacting them; and that the ordinances constitute illegal spot zoning crafted specifically to allow the erection of the cell tower.

### a. Motivation for Enacting the Ordinances

 Scalambrino argues that the Town acted with improper motives in enacting Ordinances 2007–02 and 2007–03. Specifically, Scalambrino asserts that the Town enacted the ordinances "in order to legitimize its decision to authorize the erection of the cellular phone tower," Appellant's Brief at 17, for "purely economic" reasons, *id.,* "to legitimize its prior illegal actions," *id.* at 18, "to 'get around' the existing litigation," *id.* and "to contravene the existing lawsuit," *id.* "[I]t is well settled that courts cannot inquire into the motives of members of a local legislative body when acting in a legislative capacity." *Town of Schererville v. Vavrus,* 180 Ind. App. 500, 507, 389 N.E.2d 346, 351 (1979). The Town Council exercised its legislative power in passing the amendments to the zoning ordinance. *See id.* Therefore, even accepting Scalambrino's allegations as true, the Town Council's motivation in enacting the ordinances cannot serve as a reason to invalidate them.

### b. Spot Zoning

 Scalambrino next argues that Ordinances 2007–02 and 2007–03 constitute illegal spot zoning and are therefore invalid. Spot zoning is "the singling out of one piece of property for a different treatment from that accorded to similar surrounding land which is indistinguishable from it in character, all for the economic benefit of the owner of the lot or area so singled out." *L & W Outdoor Adver. Co. v. State,* 539 N.E.2d 497, 499 (Ind.Ct.App.1989). Spot zoning is not illegal per se in Indiana. *Hundt v. Costello,* 480 N.E.2d 284, 285 (Ind.Ct.App.1985). Rather, we must consider whether the zoning action bears a rational relation to the public health, safety, morals, convenience or general welfare. *Id.*

Ordinance 2007–02 amends the zoning ordinance to create a governmental zoning district. In the preamble, the ordinance discusses the public policy of developing cellular communication cells through the erection of cell towers and the Town's desire to limit the number of communication towers in the town or group them into

the most desirable area. The ordinance states that its purpose is:

> [T]o permit the concentrated activity which is traditionally distributed throughout a community to be centralized to preserve the residential nature of the Town and to recognize the relationship of the existing streets and roadways and the traffic patterns and circulation and the almost commercial nature incidental to providing local municipal services. In addition, the intent of this District is to encourage concentration of infrastructure, utilities, communal and municipal administrative uses by locating the Governmental District adjacent to the general commercial/business district in a centralized manner and to promote the best use of land as a buffer between the general commercial/business uses and residential uses throughout the Town.

Appellant's App. at 432. The ordinance goes on to define among the permissible uses: "Public or Private Communication systems, Cable Facilities, Public or Private Cell Towers, Communications Towers and/or antennae [sic] or similar structures...." *Id.* at 433. The ordinance utilizes the existing height restrictions in the business district section of the zoning ordinance, but specifically exempts cell towers and antennae from the height restrictions. In addition to the lots, located in block 2, included in the site lease with T–Mobile, the ordinance applies to ten lots located in block 3.

Although Ordinance 2007–02 singles out cell towers and antennae for exception from the building height requirements, it does not single out a single piece of property for different treatment. The ordinance does not change the zoning solely for the purpose of constructing a cell tower. Rather, the ordinance creates a governmental district where the Town can consolidate governmental services and utilities.

■ Second, even assuming that Scalambrino is correct that the ordinances constitute spot zoning, his argument that the amendments do not bear a rational relation to the public health, safety, morals, convenience, or general welfare is unpersuasive. Improved cellular communications in the area has a direct, positive effect on the safety and convenience of the Town as well as the surrounding community. *See Penn v. Metro. Plan Comm'n of Marion County,* 141 Ind.App. 387, 393, 228 N.E.2d 25, 29 (1967) (adopting holding in *McNutt Oil & Ref. Co. v. Brooks,* 244 S.W.2d 872 (Tex.Civ.App.1951) that "city council could properly consider not only the welfare of the inhabitants of the city, but the convenience and welfare of the traveling public...."). In addition, although Scalambrino argues that the Town was improperly motivated by a purely economic motive that does not comport with the general welfare, one definition of general welfare is "[a] society's well-being in matters of health, safety, order, morality, *economics,* and politics." *Black's Law Dictionary* 1625 (8th ed.2004) (emphasis added). The Town's decision to supplement its revenues by leasing municipal property is rationally related to improving the Town's general welfare. Therefore, we hold that Ordinances 2007–2 and 2007–3 are both procedurally and substantively valid.

### Conclusion

The Town's authorization of the site lease through Resolution 2006–2 was valid as was its amendment of the zoning ordinance through Ordinances 2007–2 and 2007–3 to allow construction of the cell tower. Therefore, the trial court did not err when it granted summary judgment to the Town and T–Mobile on Counts I–IV

and VI of Scalambrino's Second Amended Complaint.

Affirmed.

RILEY, J., and BARNES, J., concur.