Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED
Sep 09 2013, 5:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TERI A. FLORY**
Flory and Smith, Attorneys at Law
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
Indiana Department of Child Services
Indianapolis, Indiana

**CRAIG JONES**
Indiana Department of Child Services
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF S.L. and J.L., CHILDREN )
ALLEGED TO BE CHILDREN IN NEED OF SERVICES, )
)
S.B.-L., Mother, )
)
    Appellant-Respondent, )
)
       vs. )    No. 79A05-1303-JC-98
)
INDIANA DEPARTMENT OF CHILD SERVICES, )
)
    Appellee-Petitioner. )

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Faith A. Graham, Judge
Cause Nos. 79D03-1212-JC-164 and 79D03-1212-JC-165

September 9, 2013

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

S.B.-L. ("Mother") appeals the trial court's order detaining her minor child, J.L, and determining J.L. and her other child, S.L. to be children in need of services ("CHINS"). Mother presents three issues for review, which we consolidate and restate as:

1.      Whether the evidence supports the trial court findings.

2.      Whether the findings support the trial court's conclusions ordering the removal of J.L. from Mother's home and adjudicating S.L. and J.L. to be CHINS.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Mother has two children, S.L., born May 23, 2000, and J.L., born May 25, 2001. On December 8, 2012, the Department of Child Services in Tippecanoe County ("DCS") received a report that S.L. had been reported missing. He had since been located, but Mother "did not want to deal with him due to significant mental health issues." Appellant's App. at 46. On December 12, the DCS received a report that S.L. was again at the probation department as a runaway and had received several warnings, that he had been at the probation department five times since January due to runaway charges, that Mother had placed S.L. outside in the past as punishment, that he had made threats to Mother and J.L., and that he had discussed suicidal ideation. S.L. was picked up as a runaway again on December 13 and 14. On December 14, the DCS took custody of S.L.

On December 17, the DCS filed a motion for authorization to file a petition alleging S.L. and J.L. to be CHINS, a joint CHINS petition, and a request to take both

2

children into custody. On the same day, the court approved the filing of the CHINS petition and, at the conclusion of the detention hearing, entered a detention order granting wardship of S.L. and J.L to the DCS and removing the children from Mother's home pursuant to Indiana Code chapter 31-34-1. And at the initial hearing, Mother and the children's father[1] denied the allegations in the CHINS petition.

On January 14, 2013, the DCS filed a predispositional report, and the trial court held a fact-finding hearing. At the conclusion of the hearing, the court held that the DCS had shown by a preponderance of the evidence that the children were CHINS, continued their placement outside Mother's home, and ordered services to Mother and the children to continue. And following a dispositional hearing on February 13, the trial court ordered the majority of the services to the family to continue and again continued placement of the children outside Mother's home. Mother now appeals.

## DISCUSSION AND DECISION

Indiana Code Section 31-34-1-1 provides that a child under eighteen years old is a CHINS if:

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and;

(2) the child needs care, treatment or rehabilitation that the child:

(A) is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

---

[1] The children's father appeared by telephone. He is incarcerated for the attempted murder of S.L. when he was three years old. The father does not appeal the trial court's orders as to either child.

3

The DCS has the burden of proving by a preponderance of the evidence that a child is a CHINS. Ind. Code § 31-34-12-3. When reviewing the sufficiency of evidence, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing therefrom. Hallberg v. Hendricks County Office of Family & Children, 662 N.E.2d 639, 646 (Ind. Ct. App. 1996). We will not reweigh the evidence or judge the credibility of witnesses. Id.

The trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. Ind. Trial R. 52(A); Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000). In our review, we first consider whether the evidence supports the factual findings. Menard, 726 N.E.2d at 1210. Second, we consider whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. Menard, 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. Ind. Trial R. 52(A). While we defer substantially to findings of fact, we do not do so to conclusions of law. Menard, 726 N.E.2d at 1210. Again, we do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999).

4

Further, in this case the trial court entered special findings in the fact-finding order sua sponte.[2] When a trial court makes specific findings upon its own motion, the general judgment will control as to the issues upon which the court has not found and specific findings control only as to the issues they cover. C.B. v. B.W., 985 N.E.2d 340, 344 (Ind. Ct. App. 2013) (citation omitted), trans. denied. Thus, it may not be necessary that each and every special finding be correct, and even where one or more special findings are clearly erroneous, the judgment may be affirmed if the judgment is supported by other findings or is otherwise supported by the record. Where, as here, special findings are entered sua sponte, the general judgment will be affirmed if it can be sustained upon any legal theory by the evidence introduced at trial. Id. While special findings entered sua sponte control as to the issues upon which the court has found, they do not otherwise affect our general judgment standard of review, and we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court. Id.

**Issue One: Evidence to Support the Findings**

Mother first argues that the evidence does not support the findings with regard to J.L. In particular, Mother contends that most of the evidence offered at the detention hearing pertained to S.L., not to J.L. She also contends that evidence in the record contradicts the trial court's findings. We initially note that Mother has pointed to only one specific finding, and she does not provide a citation to the record for that finding. Each contention on appeal must be supported by citations to the authorities, statutes, and

---

[2] Indiana Code Section 31-34-19-10 requires the trial court to include written findings and conclusions upon the record with respect to a list of enumerated factors.

the Appendix or parts of the Record on Appeal relied on, and failure to do so may result in waiver of an issue. See Ind. Appellate Rule 46(A)(8)(a). We will not search the record to find a basis for a party's argument. Carter v. Hilliard, 970 N.E.2d 735, 755 (Ind. Ct. App. 2012). Mother has waived review of her claim that the evidence does not support the finding quoted in her brief.

Waiver notwithstanding, we exercise our discretion to consider the merits of Mother's argument that the evidence does not support that finding. In the detention order, the trial court found:

> Both boys have at one point or another over the past year reported that food is withheld as a punishment, that their mother has beaten them, that they have been forced to stand outside in inclement weather, and that they have been forced to take off all of their clothes as punishment. Mother admitted to making the children stand outside on the balcony at times and admitted videotaping the children taking off all of their clothes.

Appellant's App. at 38. At the detention hearing, Jennifer Steinsdoerfer, an assessor with the DCS, testified as to the conditions of the children. In particular, she testified that S.L. had run away from Mother's home at least four times in the past year and at least three times in December 2012, that S.L. had reported that Mother had videotaped the children naked as punishment for stealing, that Mother had made the children stand outside the home in inclement weather as punishment, and that there was not enough food in the house. Mother points to other evidence that does not support or that contradicts the evidence offered through Steinsdoerfer. But, again, we consider the evidence most favorable to the trial court's judgment. Yoon, 711 N.E.2d at 1268. And that evidence supports the finding that Mother challenges. Mother's contention that the evidence does not support the quoted finding must fail.

In her brief, Mother also raises additional but vague challenges to the findings that the boys had reported that Mother had physically harmed them, that the trial court was concerned for J.L.'s well-being in the event only S.L. were removed from the home, and that there was an emergency. Mother has failed either to provide adequate information to locate the challenged findings in the record or to support her contentions with cogent argument and citation to legal authority.[3] As such, those issues are waived. See App. R. 46(A)(8)(a). Waiver notwithstanding, Steinsdoerfer testified that S.L. had reported being beaten by Mother, and the trial court's statement after the detention hearing clearly evinced the court's concern for J.L. if he were to remain with Mother and only S.L. were removed. Mother's arguments with regard to the first two points merely amount to a request that we reweigh the evidence, which we cannot do. Yoon, 711 N.E.2d at 1268.

With regard to the finding of an emergency, we observe that J.L. was removed after the detention hearing, where there was evidence that J.L. suffers from serious mental health issues, that Mother may also suffer from mental health problems, and that Mother was unable to find or account for the amount of her children's medication. The latter fact makes suspect her ability to tend to their mental health needs. Mother's contention that the evidence does not support the findings must fail.

**Issue Two: Sufficiency of Findings**

Mother next contends that the trial court's findings do not support the orders removing J.L. from Mother's home and adjudicating J.L. and S.L. to be CHINS. Specifically, Mother argues that the trial court did not make findings required under

---

[3] In one instance, Mother cites to CHINS benchbook forms from the Indiana Judicial Center website in support of her legal argument. Such forms are not primary law and, therefore, are not proper legal support for arguments on appeal.

Indiana Code Section 31-34-5-2 to support removal of J.L., that the trial court failed to make required findings under Indiana Code Section 31-34-4-7, and that the fact-finding order does not include findings required by Indiana Code Section 31-34-1-1 to support the CHINS determination as to each child. We address each contention in turn.

Mother first contends that the trial court did not make findings to show an emergency existed. Specifically, Mother argues that the trial court did not make the findings required under Indiana Code Section 31-34-5-2 to support the removal of J.L. from her home. That statute provides:

> If a child has been removed from the child's parent, guardian, or custodian under [Indiana Code Section] 31-34-2-3 or [Indiana Code Section] 31-34-2-4, then, in accordance with federal law, at the detention hearing the court shall make written findings and conclusions that state the following:
>
> (1)    Whether removal of the child authorized by [Indiana Code Section] 31-34-2-3 or IC 31-34-2-4 was necessary to protect the child.
>
> (2)    A description of the family services available before removal of the child.
>
> (3)    Efforts made to provide family services before removal of the child.
>
> (4)    Why the efforts made to provide family services did not prevent removal of the child.
>
> (5)    Whether the efforts made to prevent removal of the child were reasonable.

Ind. Code § 31-34-5-2 (emphasis added). Indiana Code Sections 31-34-2-3 and -4 pertain to taking custody of a child believed to be a CHINS: (1) to protect the child from a perpetrator arrested under Indiana Code Section 31-34-2-2 or (2) because the child is a missing child. Neither of those conditions applies in this case with regard to either J.L. or

S.L. Therefore, the trial court was not required to make findings regarding the factors listed in Section 31-34-5-2, and Mother's argument under that statute must fail.

Mother also makes passing reference to Indiana Code Section 31-34-4-7. That statute applies when a child is removed from a parent's home before the entry of a dispositional decree or under a program of informal adjustment and sets out the procedure for approving services or programs. Section 31-34-4-7 was originally enacted in 2008 to address funding issues with regard to cases in which emergency custody is awarded to DCS. Mother has not provided analysis under that statute supported by cogent reasoning. Thus, the issue is waived. See App. R. 46(A)(8)(a). Nevertheless, we pause to discuss the statute briefly.

> We have described the purpose of Indiana Code Section 31-34-4-7 as follows:
>
> Historically, the decision as to what services to order in a CHINS proceeding was left solely to the discretion of the trial court. The trial court could consider recommendations by the local child welfare services office and representatives for the child in determining which services would be beneficial to the child. Any services ordered were paid for by the county fiscal body through the local child welfare services office. See Ind. Code § 12-19-7-1 (2007) (providing that all costs of services were required to be paid by a county). However, in 2008, the Indiana General Assembly enacted House Enrolled Act 1001 ("HEA 1001"), which in part sought to raise the level of the quality of services provided in CHINS, termination of parental rights ("TPR"), and delinquency cases by shifting the funding burden from local government to the State in exchange for more influence by DCS in recommending services. Pursuant to HEA 1001, effective January 1, 2009, DCS was granted the authority to recommend services and placements in all CHINS, TPR, and delinquency cases. Ind. Code §§ 31-34-4-7, 31-34-19-6.1 (2008). Under HEA 1001, if, in any particular case, the trial court disregards DCS's recommendations and orders services or placements other than those recommended by DCS, the county's fiscal body may become responsible for funding any and all services ordered by the trial court in that matter. Ind. Code §§ 31-34-4-7, 31-34-19-6.1. . . .

9

Ind. Dep't of Child. Svcs. v. S.G. (In re Termination of Parental Rights of J.G.), 911 N.E.2d 36, 38 (Ind. Ct. App. 2009) (internal quotation marks and citation omitted). The crux of Section 31-34-4-7 is the balance of power between the trial court and the DCS with regard to the services or programs ordered for and the placement of CHINS. In the event the trial court enters findings and an order rejecting the DCS's recommendations regarding the services, placement, or programs for a CHINS, the statute allows the DCS an expedited appeal. See Ind. Code § 31-34-4-7(f). Nothing in the statute is geared toward the rights of a parent or guardian, nor does the statute provide an appeal based on a trial court's failure to follow the requirements of the statute to any party other than the DCS. See Scalambrino v. Town of Michiana Shores, 904 N.E.2d 673, 680 (Ind. Ct. App. 2009) (holding the enumeration of certain things in a statute implies the exclusion of all others"). Thus, even if Mother had provided adequate analysis under the statute, she would have lacked standing to appeal based on the trial court's alleged failure to follow the requirements of that statute.

Finally, Mother contends that the trial court's findings do not include those required by Indiana Code Section 31-34-1-1. Again, that statute provides that a child under eighteen years old is a CHINS if:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and;
>
> (2) the child needs care, treatment or rehabilitation that the child:
>
> > (A) is not receiving; and

10

> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-1. Mother does not clarify which trial court order erroneously omits the necessary findings under Section 31-34-1-1. To the extent Mother refers to the disposition order, that order is governed by Section 31-34-19-10, which does not require findings on the definition of a CHINS from Section 31-34-1-1. But to the extent Mother challenges the CHINS Fact Finding Order, she is correct that the trial court made no finding under Section 31-34-1-1(2). That order provides, in relevant part:

> Court finds here that [S.L.] and [J.L.] are Children In Need Of Services (CHINS), as defined by Indiana law:
>
> IC 31-34-1-1 in that their physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian or custodian to supply the child[ren] with the necessary food, clothing, shelter, medical care, education or supervision.

Appellant's App. at 65. That finding pertains to Indiana Code Section 31-34-1-1(1). Although the trial court did not make a finding under Section 31-34-1-1(2), evidence in the record supports a finding that the children need care, treatment or rehabilitation that they are not receiving and are unlikely to be provided or accepted without the coercive intervention of the court. Specifically, again, the children suffer from serious mental health issues. And Steinsdoerfer testified that, when S.L. was removed from the home, Mother could not locate all of the children's medication and the medication she provided contained an amount that did not indicate correct dosages had been given since the last refill. Such evidence is sufficient to show that the children were not receiving necessary medical care and would not be likely to receive the same without the coercive

11

intervention of the court. As such, Mother's argument that the evidence is insufficient to show that the children are CHINS must fail.

## Conclusion

Mother has waived her claims that the evidence does not support the findings. Waiver notwithstanding, Mother clearly identifies only a single finding in her challenge and requests that we reweigh the evidence, which we cannot do. Mother's challenges to the trial court's conclusions, based on its failure to make findings under Indiana Code Sections 31-34-5-2 or 31-34-4-7, are without merit because those statutes do not apply here. Finally, evidence in the record supports the determination under Section 31-34-1-1 that J.L. and S.L. are CHINS. As such, we affirm.

Affirmed.

MATHIAS, J., and BROWN, J., concur.