# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**RICHARD E. SHEVITZ**
**SCOTT D. GILCHRIST**
Cohen & Malad LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**JOSEPH H. YEAGER, JR.**
**MATTHEW T. ALBAUGH**
Baker & Daniels LLP
Indianapolis, Indiana

**WALTER C. CARLSON**
**KRISTEN R. SEEGER**
Sidley Austin LLP
Chicago, Illinois

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| WILLIAM T. CARTER, derivatively on behalf of CNO FINANCIAL GROUP, INC., ) ) ) | |
| Appellant-Plaintiff, ) | |
| ) | |
| vs. ) | No. 49A02-1106-PL-582 |
| ) | |
| R. GLENN HILLIARD, et al., ) | |
| ) | |
| Appellees-Defendants. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David J. Dreyer, Judge
Cause No. 49D10-1006-PL-24523

**June 22, 2012**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

William T. Carter, derivatively on behalf of CNO Financial Group, Inc. ("CNO" or "the Company"), formerly known as Conseco, Inc. ("Conseco," where applicable), filed a complaint and later an amended complaint ("Amended Complaint") against R. Glenn Hilliard, Donna A. James, R. Keith Long, Debra J. Perry, C. James Prieur, Neal C. Schneider, Michael T. Tokarz, John G. Turner, William Kirsch, Eugene Bullis, Michael Dubes, James Hohmann, Edward Bonach, Ali Inanilan, and John Wells (collectively "the Defendants") alleging breach of Defendants' fiduciary and good faith duties, unjust enrichment, abuse of control, gross mismanagement, and waste of corporate assets. The Defendants filed a motion to dismiss the Amended Complaint on the ground that Carter had failed to allege claims showing that pre-suit demand on CNO's Board of Directors was futile, as required by Delaware Chancery Court Rule 23.1. Following a hearing, the trial court granted the motion and dismissed the Amended Complaint. Carter presents several issues for review, which we consolidate and restate as:

1. Whether Carter has alleged particularized facts to show that pre-suit demand was excused under Delaware law.

2. Whether Carter has alleged particularized facts to show bad faith by the Director Defendants so as to excuse pre-suit demand pursuant to the standard set by the exculpatory clause in the corporate charter.

We conclude that Carter has not alleged particularized facts to show that the Director Defendants face a substantial likelihood of liability for the conduct described in the Amended Complaint, nor has he alleged particularized facts to show that the Director Defendants breached their duties of good faith and loyalty. Therefore, Carter has not shown under Delaware law that pre-suit demand on the Board would have been futile.

As such, we conclude that the trial court did not err when it granted CNO's motion to dismiss for failure to make pre-suit demand on the board of directors. We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

The facts in this case are not contested. The trial court's Order Granting Defendants' Motion to Dismiss describes the parties:

> Plaintiff Carter is a shareholder of CNO. CNO is a publicly[ ]traded insurance holding company headquartered in Carmel, Indiana, and is a Delaware corporation. At the time this suit was filed, CNO's Board of Directors consisted of ten individuals, nine of whom were independent, outside Board members. Eight of those ten Board members were named as defendants: Hilliard, James, Long, Perry, Prieur, Schneider, Tokarz, and Turner. Of those eight, Hilliard, James, Long, Perry, Schneider, Tokarz, and Turner are non-employee, outside directors (collectively, the "Outside Directors"). In addition to serving as a director, Prieur is CNO's Chief Executive Officer. Defendant Bonach is a current officer of CNO.[2] The remaining defendants are former officers of CNO.

Appellant's App. at 14.

On June 2, 2010, Carter filed a purported shareholder derivative action against the Defendants, current and former CNO directors and officers. Hilliard, James, Long, Perry, Prieur, Schneider, Tokarz, and Turner are currently CNO directors ("Director Defendants"), and Kirsch, Bullis, Dubes, Hohmann, Bonach, Inanilan, and Wells are former or present CNO officers ("Officer Defendants"). Carter had not made a demand on CNO's board of directors ("the Board") before filing the complaint. On July 26, Defendants filed a motion to dismiss for failure to make pre-suit demand on the Board. On November 1, Carter filed the Amended Complaint. Regarding Defendants, the Amended Complaint alleges, in relevant part:

---

[1] We heard oral argument in this case on April 19, 2012.

[2] Since the Amended Complaint was filed, Bonach has become the CEO of the Company.

3

57. By reason of their positions as officers, directors, and/or fiduciaries of CNO and because of their ability to control the business and corporate affairs of CNO, Defendants owed CNO and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage CNO in a fair, just, honest, and equitable manner. Defendants were and are required to act in furtherance of the best interests of CNO and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to CNO and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligation of fair dealing.

58. Defendants, because of their positions of control and authority as directors and/or officers of CNO, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with CNO, each of the Defendants had knowledge of material non-public information regarding the Company.

59. To discharge their duties, the officers and directors of CNO were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of CNO were required to, among other things:

> a. Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;
> b. Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations including acting only within the scope of its legal authority;
> c. When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence; and
> d. Assure that a corporate information and reporting system was in place, which the Board concluded is adequate and is designed to provide senior management and the Board with timely, accurate information sufficient to allow

4

management and the Board to reach informed judgments concerning the Company's compliance with applicable laws and its business performance.

60. Pursuant to the Company's Corporate Governance Guidelines (the "Governance Guidelines"), each member of the Board is specifically responsible for "monitoring management's performance and adherence to corporate standards." Further, according to the Governance Guidelines, each member of the Board is responsible for understanding, reviewing, and monitoring implementation of the Company's strategic plans, capital plans, operating plans, and budgets to assure effective:

* Capital allocation
* Debt levels and structure
* Investment policies and practices
* Risk and vulnerability assessment and management
* Growth opportunities
* Engagement on central issues facing company
* Grasp of tradeoffs at the heart of the company

61. Moreover, pursuant to the Governance Guidelines, each member of the Board is specifically responsible for "focusing on the integrity, quality and clarity of the corporation's financial reports and public disclosures and the processes that produce them" and is also duty-bound to "review the adequacy of the corporation's compliance and reporting systems." Once again, in order to adequately fulfill these duties (and their duties under Delaware law), the Board was required to ensure that sufficient information reporting systems were designed and implemented such that they could adequately fulfill their oversight responsibilities.

62. Pursuant to the Audit Committee's Charter, the members of the Audit Committee are specifically required, inter alia, to:

a. Review the adequacy of the Company's internal controls that could materially affect the Company's financial statements;
b. Review and discuss, prior to public dissemination, the annual audited and quarterly unaudited financial statements with management;
c. Review and discuss earnings releases;
d. Review the results of internal audits and discuss related significant internal control matters with the internal auditors and management, including significant reports to

5

management prepared by the internal auditors and management's responses;

e. Review significant accounting and reporting issues and discuss with management and the independent auditor their impact on the Company financial statements; and

f. Review the adequacy and effectiveness of the Company's procedures to ensure compliance with legal and regulatory requirements.

63. Pursuant to the Governance Committee's Charter, the members of the Governance Committee are specifically required, inter alia, to:

a. Consider matters of corporate governance and to create, maintain and periodically review the Company's corporate governance principles and code of ethics;

b. Adopt policies designed to encourage the highest levels of corporate conduct by the Board, the Company and its officers, employees, and agents; and

c. Consider the Company's corporate strategy, including the evaluation of any significant acquisitions or divestitures or other material transactions involving the Company.

64. Pursuant to the Compensation Committee's Charter, the members of the Compensation Committee are specifically required, inter alia, to:

a. Establish annual and long-term corporate and individual performance goals and objectives for the Company's executive officers and key senior officers;

b. Recommend to the Board the compensation of the CEO;

c. Approve the compensation for other executive officers and key senior officers; and

d. Approve the overall compensation policy including cash-based incentive compensation plans and equity-based compensation plans.

Id. at 38-44. After detailing certain aspects of Defendants' conduct beginning in 2003,

Carter made the following allegations to show that demand is excused in this case:

227.a. A majority of the members of the Board were aware of, or should have been aware of, numerous red flags regarding the Company's serious problems with its LTC [Long Term Care] business segment, including claims documentation issues, the failure to adequately set reserves, data

6

integrity issues, budget problems, and market conduct violations. As such, a majority of the current Board knew[] or was recklessly indifferent to the facts that, among other things: (i) multiple internal control failures caused claim loss/reserve data to be inherently unreliable; and (ii) Defendants were systematically understating reserves; which (iii) caused the Company's financial statements to be artificially and materially overstated. Notably, half of the Company's current directors (defendants Hilliard, Schneider, Tokarz, Turner, and Perry) have served as directors of the Company since 2004 or prior to 2004. In particular, as alleged herein, by 2003, the Board was meeting on a quarterly basis in the "War Room," to specifically discuss issues with LTC with the Company's senior officers, and these meetings began to occur with increasing frequency in 2005. DW1 [confidential Defense Witness 1] has also stated that LTC Reports prepared by LTC personnel regarding the LTC business containing a range of information including claims issues, reserve issues, budget problems, and market conduct violations were regularly provided to the Board in connection with the War Room meetings, along with comprehensive compliance reports personally prepared by DW1 (which "often" dealt, at least in part, with the Company's ongoing LTC issues). Moreover, as discussed above, during a nine[-]month period spanning between [sic] 2004 and 2005, a comprehensive internal audit of the LTC segment was performed, and after the audit was concluded sometime in 2005, as Audit Committee members, defendants Schneider, Perry, and Turner received detailed results of this audit. Despite clearly being placed on notice of serious issues regarding LTC which were causing the Company's reserves to be inadequately set, defendants Hilliard, Schneider, Tokarz, Perry, and Turner consciously disregarded their fiduciary duties to CNO when, under their direction, the Company's ongoing LTC issues were not addressed and the Company continued to inadequately set reserves over a multi-year period. Thus, demand was not required upon Hilliard, Schneider, Tokarz, Perry, and Turner. Because Hilliard, Schneider, Perry and Turner comprise a majority of the directors on the Board (for demand futility purposes), demand is excused;

227.b. Defendants Hilliard, Schneider, Tokarz, Turner, and Perry are also interested in a demand because they engaged in conduct which is not protected by the business judgment rule in connection with their decision to not remedy the serious problems known to them through the various "red flags" described above. These directors were clearly placed on notice for years of the Company's problems, yet chose to do nothing to remedy them. Thus, demand is excused as to Hilliard, Schneider, Tokarz, Turner, and Perry, and because they comprise a majority of the Board, demand is excused;

227.c.  Demand is further excused because the Board failed to exercise its good faith judgment to ensure that the Company's information and reporting system was in concept and design adequate to assure the Board that appropriate information will come to its attention in a timely manner as a matter of ordinary operations.  In particular, it is unquestioned that the Board had actual knowledge of the Company's LTC problems and failed to do anything to prevent and/or remedy them[;] however[,] this knowledge did not come as a result of an adequate system of information[-]reporting during the ordinary course of operations.  Rather[,] this information came to the Board's attention as a result of various audits, special meetings, and government investigations.  Had the Board properly ensured that an adequate information[-]reporting system was in place from the beginning, as they were required to do under Delaware law, the serious problems with the Company's LTC segment could have been remedied before the Company suffered the substantial harm alleged herein.  Thus, demand is futile;

227.d.  Demand is also excused because, as detailed herein, the Board intentionally misled the Multistate Examiners or permitted others to do so, thus clearly illustrating their hostility to the relief sought in this action. Accordingly, a reasonable stockholder would not believe, based on the confidential witness testimony detailed above, that the Board would have been able to properly and impartially consider a demand in good faith. Thus, demand is futile;

227.e.  Every member of the Board is required to comply with the Company's Corporate Governance Guidelines.  The Corporate Governance Guidelines require each of the Company's directors to monitor "management's performance and adherence to corporate standards." Further, the Corporate Governance Guidelines requires [sic] directors to focus "on the integrity, quality and clarity of the corporation's financial reports and public disclosures and the processes that produce them." Therefore, defendants Hilliard, James, Long, Perry, Prieur, Schneider, Tokarz, and Turner face a substantial likelihood of liability for their breaches of fiduciary duties and any demand upon them is futile;

227.f.  At times relevant hereto, defendants Long, Schneider, and Turner served as members of the Audit Committee.  Pursuant to the Audit Committee Charter, members of the Audit Committee are charged with oversight of the integrity of the Company's financial statements, public disclosures and financial reporting process. Defendants Long, Schneider, and Turner breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee permitted the above false and misleading statements to be made, which eventually led to a restatement.

8

Therefore, defendants Long, Schneider, and Turner face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile;

227.g.   At times relevant hereto, defendants Perry and Tokarz served as members of the Governance Committee.   Pursuant to the Governance Committee Charter, members of the Governance Committee are charged with adopting policies designed to encourage the highest levels of corporate conduct by the Board, the Company and its officers, employees and agents. Defendants Perry and Tokarz breached their fiduciary duties of due care, loyalty, and good faith because the Governance Committee permitted the pervasive misconduct described above to go undisclosed.   Therefore, defendants Perry and Tokarz face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile;

227.h.   Defendants Tokarz, Perry, and James are interested as a result of their conduct on the Compensation Committee.  Pursuant to the Company's Compensation Committee Charter, directors on the Compensation Committee are responsible for, inter alia, reviewing and approving the compensation of the Company's senior officers in conduction with previously established performance metrics.  Defendants Tokarz, Perry, and James breached their fiduciary duties of due care, loyalty, and good faith, because the Compensation Committee, inter alia, awarded the above-discussed compensation based on admittedly false financial results as evidenced by the Company's need for a restatement.   Further, the Compensation Committee has done nothing to rectify its above failures. Therefore, defendants Tokarz, Perry, and James (if not the entire Board) each face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile; and

227.i.   The principal professional occupation of defendant Prieur is his employment with CNO as its CEO, pursuant to which he has received and continues to receive substantial monetary compensation and other valuable benefits.  As a result, in the Company's most recent annual proxy statement filed in April 2010, the Board has conceded that Prieur is a non-independent director.   Thus, defendant Prieur lacks independence, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action.

Id. at 103-08.

On December 17, Defendants filed a motion to dismiss the Amended Complaint under Delaware and Indiana law, alleging that Carter had not shown that pre-suit demand

9

was excused. On April 21, 2011, the trial court held oral argument on the motion to dismiss. And on June 2, the trial court entered its order granting that motion and dismissing the Amended Complaint ("the Order"). The Order provides, in relevant part:

> B. The Allegations
>
> CNO, through its subsidiaries, engages in the development, marketing, and administration of supplemental health insurance, annuity, individual life insurance, and other insurance products for senior and middle-income markets in the United States. Carter's Amended Complaint focuses principally on the Company's Long Term Care run-off business ("LTC") during the period from August 2005 through March 2008. Among other things, Carter claims that Defendants concealed problems with the Company's claims handling process[] and that those problems impacted CNO's ability to accurately determine its liabilities and establish reserves. Carter alleges that numerous improper claims practices occurred in the LTC business, which in turn distorted and understated the Company's true claims exposure. Carter further alleges that the [D]efendants issued a series of false and misleading statements.
>
> * * *
>
> On February 25, 2008, CNO announced that it would delay the filing of its Form 10-K for the year ended December 31, 2007, and restate its financial results for 2005 and 2006. On March 28, 2008[,] CNO finalized its restatement. Thereafter, CNO announced on August 11, 2008[,] its plan to transfer LTC to an independent trust and contributed capital to the trust when LTC was transferred.
>
> Carter alleges that the Company was harmed by these events. He further alleges that he did not make a demand on CNO's Board before filing suit because it would have been futile to do so.
>
> C. The Related Federal Securities Litigation
>
> Carter based this shareholder derivative litigation largely on prior pending federal securities litigation filed in the United States District Court for the Southern District of New York. That litigation is styled <u>Plumbers & Pipefitters Local Union No. 719 Pension Trust Fund v. Conseco, Inc.</u>, No. 09-CV-6966 (S.D.N.Y.). The majority of Carter's confidential witness allegations are taken from the <u>Plumbers</u> complaint. . . . <u>Plumbers</u> names only the officer defendants from this litigation. It does not name any of the

10

Outside Directors as defendants or direct any of its confidential witness allegations at those individuals.[fn]

> [Footnote: Defendants point out that Carter modified all but one of the confidential witness allegations from <u>Plumbers</u> when he incorporated them into the complaints he has filed here, changing the subject of the allegations to include the Outside Director defendants.]

> The <u>Plumbers</u> matter was dismissed March 30, 2011. In dismissing that litigation, United States District Court Judge John G. Koetl held that the information that the CNO officer defendants allegedly possessed relating to LTC's prospects, reserves, and record keeping did not "support[] a strong and plausible inference that the [defendants] made any of the challenged public statements with knowledge that they were false or with reckless indifference[.] . . . To the contrary, nearly <u>all</u> of this information was addressed in some form in the company's lengthy and thorough public disclosures." <u>Plumbers & Pipefitters Local Union No. 719 Pension Trust Fund v. Conseco, Inc.</u>, 09 Civ. 6966 (JGK), 2011 U.S. Dist. LEXIS 34241, at *57 (S.D.N.Y. Mar. 30, 2011). Judge Koetl further held that the <u>Plumbers</u> complaint was "wholly devoid of any particularized allegation connecting the individual defendants to information suggesting unlawful activity within the company[,]" (<u>id.</u> at *62-*63), and did not support the inference that anyone knowingly made material misstatements[,] (<u>id.</u> at *64-*65). Judge Koetl also detailed inadequacies of the confidential witness allegations on which Carter heavily relies here.

Appellant's App. at 14-17 (some alterations in original). In sum, the trial court granted the motion to dismiss, finding that Carter had not shown that demand was futile as required by Delaware law. Carter now appeals.

## DISCUSSION AND DECISION

Derivative actions are suits "'asserted by a shareholder on the corporation's behalf against a third party . . . because of the corporation's failure to take some action against the third party.'" <u>G&N Aircraft, Inc. v. Boehm</u>, 743 N.E.2d 227, 234 (Ind. 2001) (quoting Black's Law Dictionary 455 (7th Ed. 1999)). They are brought "to redress an injury sustained by, or enforce a duty owed to, a corporation." <u>Id.</u> (citation and internal

11

quotation marks omitted). Derivative actions are brought in the name of the corporation and are usually governed by Trial Rule 23.1 and Indiana Code Section 23-1-32-1.

Before filing a derivative action, a plaintiff must make a demand on the board of directors to take action against the third party on behalf of the corporation as sought in the complaint. Indiana Trial Rule 23.1 provides: "[T]he complaint shall also allege with particularity the efforts, if any, made by the plaintiff, to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort." The issues presented in this case turn on whether the plaintiff in a shareholder derivative action has pleaded facts sufficient to avoid the requirement that he make a demand on the board before filing suit.

The substantive law on demand is the law of the state of incorporation. Piven v. ITT Corp. (In re ITT Derivative Litig.), 932 N.E.2d 664, 667 (Ind. 2010) (citing Kamen v. Kemper Fin. Servs. Inc., 500 U.S. 90 (1991)). CNO Financial is incorporated in Delaware. Therefore, while we apply the procedural rules of Indiana, we must consider Delaware substantive law to determine whether demand is excused in this case. See id. Delaware Court of Chancery Rule 23.1 is almost identical to Indiana Trial Rule 23.1 and also requires the shareholder in a derivative action to make a demand on the board before filing suit. That rule, which is part of the substantive law of Delaware on demand futility, provides in relevant part:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation . . . , the corporation . . . having failed to enforce a right which may properly be asserted by it, the complaint . . . shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable

12

authority and the reasons for his failure to obtain the action or for not making the effort.

Del. Ch. Ct. R. 23.1. The Delaware Supreme Court has explained the reason for that rule:

> It is a fundamental principle of the Delaware General Corporation Law that "[t]he business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors . . . ." Thus, "by its very nature [a] derivative action impinges on the managerial freedom of directors." Therefore, the right of a stockholder to prosecute a derivative suit is limited to situations where either the stockholder has demanded the directors pursue a corporate claim and the directors have wrongfully refused to do so, or where demand is excused because the directors are incapable of making an impartial decision regarding whether to institute such litigation.

Stone v. Ritter, 911 A.2d 362, 366-67 (Del. 2006) (alterations in original) (citations omitted).

Appellate review of decisions applying Delaware Chancery Court Rule 23.1 is de novo. Brehm v. Eisner, 746 A.2d 244, 254 (Del. 2000). Here, the Defendants used a Rule 12(b)(6) motion to dismiss as the vehicle for alleging Carter's failure to meet the pleading requirements discussed below. Our review of a trial court's grant or denial of a motion to dismiss for failure to state a claim is similarly de novo. PricewaterhouseCoopers, LLP v. Massey, 860 N.E.2d 1252, 1256 (Ind. Ct. App. 2007), trans. denied.

**Pleading Burden**

A plaintiff seeking to avoid the demand requirement of Delaware Chancery Court Rule 23.1 faces a high pleading burden. That burden has been described as follows:

> The demand requirement is not a mere procedural formality, but rather an important stricture of substantive law. Court of Chancery Rule 23.1 requires that the complaint allege "with particularity" the reasons for the plaintiff's failure to make a demand on the board. This standard is more

stringent than the pleading standard under Court of Chancery Rule 12(b)(6). Thus, it is plaintiff's burden to plead, with allegations of particularized facts, why making a demand would have been futile.

Edward P. Welch et al., Folk on the Delaware General Corporation Law § 327.4.2.2, at GCL-XIII-83 to -84 (5th ed. 2012) (footnotes omitted). Conclusory allegations of fact or law that are not supported by allegations of specific fact may not be taken as true. Brehm, 746 A.2d at 254.

> Rule 23.1 is not satisfied by conclusory statements or mere notice pleading. On the other hand, the pleader is not required to plead evidence. What the pleader must set forth are particularized factual statements that are essential to the claim. Such facts are sometimes referred to as "ultimate facts," "principal facts" or "elemental facts." Nevertheless, the particularized factual statements that are required to comply with the Rule 23.1 pleading rules must also comply with the mandate of Chancery Rule 8(e) that they be "simple, concise and direct." A prolix complaint larded with conclusory language . . . does not comply with these fundamental pleading mandates.

Id. (footnotes omitted).

> Nevertheless, the "reasonable doubt" standard of Aronson[ v. Lewis, 473 A.2d 805 (Del. 1984), discussed below,] unavoidably calls upon the trial court to make a decision that is highly particular and involves informed judgment. That judgment will be factual in nature and will determine whether the accumulation of all relevant factors pleaded creates a reasonable doubt as to the availability of business judgment protection. Delaware courts have refused to establish a particular "reasonable doubt" standard, but instead employ an objective analysis to determine whether a plaintiff's complaint contains the facts necessary to support a finding of reasonable doubt.

Welch, supra, § 327.4.2.2, at GCL-XIII-84 (footnotes omitted). "The pre-suit demand futility analysis must be conducted for each claim in a stockholder derivative action." Id. at GCL-XIII-85.

14

<u>Aronson Test</u>

In cases based on a particular decision or transaction of a board of directors, the test for determining whether demand is excused is set out in <u>Aronson v. Lewis</u>.[3] Under that test, demand will be excused only if the plaintiff alleges in the complaint particularized facts creating a reasonable doubt that "(1) the directors are disinterested and independent [or that] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." 473 A.2d at 814. Under the first prong of <u>Aronson</u>, a director is "'interested if he will be materially affected, either to his benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders.'" Welch, <u>supra</u>, § 327.4.2.4.1., at GCL-XIII-89 (quoting <u>Seminaris v. Landa</u>, 662 A.2d 1350, 1354 (Del. Ch. 1995)).[4] Under the second prong of the <u>Aronson</u> test, the shareholder plaintiff must demonstrate a reasonable doubt that the challenged transaction was otherwise the product of a valid exercise of business judgment. <u>Aronson</u>, 473 A.2d at 814.

<u>Rales Test</u>

In some cases, the conduct complained of in the derivative action may not be based on a particular business decision or transaction. For example, the shareholder plaintiff may allege that the corporation has been damaged by the board's failure to act. "Where there is no conscious decision by directors to act or refrain from acting, the

---

[3] Carter does not point to one or more particular transactions as the basis for his claims. Therefore, the <u>Aronson</u> test does not apply. However, it is described here because it is the foundation for the evolution of the pleading standard tests that followed.

[4] With the exception of Prieur, Carter does not contend that the Director Defendants were not independent, only that they are interested.

business judgment rule has no application." Rales v. Blasband, 634 A.2d 927, 934 (Del. 1993), abrogated on other grounds by Hamilton Partners, L.P. v. England, 11 A.3d 1180, 1207 (Del. Ch. 2010), (citing Aronson, 473 A.2d at 813). "Instead, it is appropriate in these situations to examine whether the board that would be addressing the demand can impartially consider its merits without being influenced by improper considerations." Rales, 634 A.2d at 934. In such cases, the court

> must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand. If the derivative plaintiff satisfies this burden, then demand will be excused as futile.

Id. at 935. The parties agree that the Rales test applies in this case.

### Issue One:   Demand Futility

In paragraph 227 of the Amended Complaint, Carter sets out nine reasons that demand on the board was not required before filing his complaint. We consider each of the demand futility allegations in turn under the Rales test. Again, under that test we must determine whether Carter's Amended Complaint alleges particularized factual allegations creating a reasonable doubt that, as of the time the Amended Complaint was filed, a majority of the Director Defendants could have properly exercised their independent and disinterested business judgment in responding to a demand. See id. at 935. In other words, here we must review the Amended Complaint to determine whether Carter has made particularized factual allegations to show a reasonable doubt that a majority of the ten-member Board, at least six of them, could have impartially considered

16

the merits of demand without being influenced by improper considerations.  See id. at 934.

"A director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders."  Rales, 634 A.2d at 936.  "Directorial interest also exists where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders."  Id.  Additionally, the mere threat of personal liability is insufficient to show that a director is interested.  See id.  But a director's interest may be demonstrated by showing that that director faces a substantial likelihood of liability.  See id.

Carter first contends that demand on the board was excused because:

227.a.  A majority of the members of the Board were aware of, or should have been aware of, numerous red flags regarding the Company's serious problems with its LTC business segment, including claims documentation issues, the failure to adequately set reserves, data integrity issues, budget problems, and market conduct violations.  As such, a majority of the current Board knew[] or was recklessly indifferent to facts that, among other things:  (i) multiple internal control failures caused claim loss/reserve data to be inherently unreliable; and (ii) Defendants were systematically understating reserves; which (iii) caused the Company's financial statements to be artificially and materially overstated.  Notably, half of the Company's current directors (defendants Hilliard, Schneider, Tokarz, Turner, and Perry) have served as directors of the Company since 2004 or prior to 2004.  In particular, as alleged herein, by 2003, the Board was meeting on a quarterly basis in the "War Room," to specifically discuss issues with LTC with the Company's senior officers, and these meetings began to occur with increasing frequency in 2005.  [Confidential Defense Witness 1 ("DW1")] has also stated that LTC Reports prepared by LTC personnel regarding the LTC business containing a range of information including claims issues, reserve issues, budget problems, and market conduct violations were regularly provided to the Board in connection with the War Room meetings, along with comprehensive compliance reports personally prepared by DW1 (which "often" dealt, at least in part, with the Company's ongoing LTC issues).  Moreover, as discussed above, during the nine[-]month period spanning between [sic] 2004 and 2005, a

17

comprehensive internal audit of the LTC segment was performed, and after the audit was concluded sometime in 2005, as Audit Committee members, defendants Schneider, Perry, and Turner received detailed results of this audit. Despite clearly being placed on notice of serious issues regarding LTC which were causing the Company's reserves to be inadequately set, defendants Hilliard, Schneider, Tokarz, Perry, and Turner consciously disregarded their fiduciary duties to CNO when, under their direction, the Company's ongoing LTC issues were not addressed and the Company continued to inadequately set reserves over a multi-year period. Thus, demand was not required upon Hilliard, Schneider, Tokarz, Perry and Turner. Because Hilliard, Schneider, Tokarz, Perry and Turner comprise a majority of the directors on the Board (for demand futility purposes), demand is excused[.]

227.b. Defendants Hilliard, Schneider, Tokarz, Perry and Turner are also interested in demand because they engaged in conduct which is not protected by the business judgment rule in connection with their decision not to remedy the serious problems known to them through the various "red flags" described above. These directors were clearly placed on notice for years of the Company's problems, yet chose to do nothing to remedy them. This decision is not a protected business judgment. Thus, demand is excused as to Hilliard, Schneider, Tokarz, Turner, and Perry, and because they comprise a majority of the Board, demand is excused[.]

Appellant's App. at 103-05. Details supporting these allegations are found earlier in the Amended Complaint. But Carter has not stated anywhere in the Amended Complaint particularized facts on which we could conclude that a majority of the Board members, or any of them, received a personal financial benefit or detriment not shared by the stockholders. Nor does the Amended Complaint allege facts to show that the named directors face a substantial likelihood of liability arising from their alleged failure to "remedy serious problems known to them through the various 'red flags' described above." Id.

In sum, the conclusory allegations in these sub-paragraphs are insufficient to satisfy the Rales test. To the extent Carter contends that the business judgment rule

18

offers no protection, that rule has no application under the <u>Rales</u> test in any event. <u>Rales</u>, 634 A.2d at 934. Sub-paragraphs 227.a. and 227.b. do not contain particularized allegations of fact to show that the Director Defendants were not disinterested or faced a substantial risk of liability for their performance as directors. Therefore, Carter has not shown in sub-paragraphs 227.a. or 227.b. that demand was futile.

Carter next contends:

> 227.c. Demand is further excused because the Board failed to exercise its good faith judgment to ensure that the Company's information and reporting system was in concept and design adequate to assure the Board that appropriate information will come to its attention in a timely manner as a matter of ordinary operations. In particular, it is unquestioned that the Board had actual knowledge of the Company's LTC problems and failed to do anything to prevent and/or remedy them[;] however[,] this knowledge did not come as a result of an adequate system of information[-]reporting during the ordinary course of operations. Rather[,] this information came to the Board's attention as a result of various audits, special meetings, and government investigations. Had the Board properly ensured that an adequate information[-]reporting system was in place from the beginning, as they were required to do under Delaware law, the serious problems with the Company's LTC segment could have been remedied before the Company suffered the substantial harm alleged herein. Thus, demand is futile[.]

Appellant's App. at 105-06. Again, Carter has not alleged, here or elsewhere in the Amended Complaint, that a majority of the Directors were interested or faced a substantial likelihood of liability for the conduct described in sub-paragraph 227.c. Nor does this sub-paragraph summarize conduct that is detailed elsewhere in the Amended Complaint for which we could conclude that the Directors were interested or faced a substantial likelihood of liability. Thus, the demand futility allegations in sub-paragraph 227.c. also fail the <u>Rales</u> test.

Carter further contends that:

19

227.d. Demand is also excused because, as detailed herein, the Board intentionally misled the Multistate Examiners or permitted others to do so, thus clearly illustrating their hostility to the relief sought in this action. Accordingly, a reasonable stockholder would not believe, based on the confidential witness testimony detailed above, that the Board would have been able to properly and impartially consider a demand in good faith. Thus, demand is futile[.]

Appellant's App. at 106. With regard to the Multistate Examination, Carter alleges that "false and misleading information was provided to the Multistate Examiners," and he details the nature of the misinformation in paragraphs 165 through 170 of the Amended Complaint. Id. at 75. There Carter alleges that "Defendants falsely reported" information to the Multistate Examiners and "misrepresented . . . that the inappropriate use of [a certain claims processing method, the No Letter Close,] was discontinued by May 2007[.]" Id. at 78. But the complaint does not allege that the Board's duties included providing information to or in any way interacting with the Multistate Examiners. Such work was likely the responsibility of the Company's senior officers and their subordinates. And the Complaint does not allege with particularity facts to show that the Board was aware and "permitted others" to mislead or misinform the Multistate Examiners. Id. at 106.

The allegations in sub-paragraph 227.d. are conclusory and do not show that the Director Defendants were interested or faced a substantial risk of liability with regard to the Multistate Examination. And the Multistate Examiners did not find any particular person or persons liable for the problems they found at Conseco. As such, Carter has not shown that demand is excused as to the Board's conduct regarding the Multistate Examination.

With regard to the Board's duties under the corporate Governance Guidelines, Carter alleges:

> 227.e. Every member of the Board is required to comply with the Company's Corporate Governance Guidelines. The Corporate Governance Guidelines require each of the Company's directors to monitor "management's performance and adherence to corporate standards." Further, the Corporate Governance Guidelines requires [sic] directors to focus "on the integrity, quality and clarity of the corporation's financial reports and public disclosures and the processes that produce them." Therefore, defendants Hilliard, James, Long, Perry, Prieur, Schneider, Tokarz, and Turner face a substantial likelihood of liability for their breaches of fiduciary duties and any demand upon them is futile[.]

Appellant's App. at 106. In sum, Carter alleges that the named Director Defendants faced a substantial risk of liability because they did not perform their duties on the board in compliance with the Corporate Governance Guidelines. But elsewhere the Amended Complaint alleges that the Board was aware of and met to find solutions for the problems plaguing the LTC segment. Specifically, beginning in 2003 the Director Defendants met quarterly "to address[] multiple and serious problems with LTC[.]" Id. at 63. Those meetings increased in frequency beginning in 2005. The meetings to address the problems in the LTC segment demonstrate that the Board was attempting to monitor "management's performance and adherence to corporate standards." Id. Moreover, following the Multistate Examination, the company agreed to a settlement under which it agreed to pay more than $32 million in fines and costs, $30 million of which was dedicated to claims-handling improvements and restitution. Again, Carter has not alleged with particularity facts to show that the Director Defendants did not perform their duties in compliance with the Corporate Governance Guidelines. As such, Carter has not shown that the Director Defendants are subject to a substantial likelihood of liability for the

conduct described in sub-paragraph 227.e. and, therefore, that sub-paragraph does not show that demand was excused.

Finally, Carter asserts the following three claims based on the named Directors' memberships on the Governance Committee, the Audit Committee, and the Compensation Committee respectively as bases for excusing demand:

227.f. At times relevant hereto, defendants Long, Schneider, and Turner served as members of the Audit Committee. Pursuant to the Audit Committee Charter, members of the Audit Committee are charged with oversight of the integrity of the Company's financial statements, public disclosures and financial reporting process. Defendants Long, Schneider, and Turner breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee permitted the above false and misleading statements to be made, which eventually led to a restatement. Therefore, defendants Long, Schneider, and Turner face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile[.]

227.g. At times relevant hereto, defendants Perry and Tokarz served as members of the Governance Committee. Pursuant to the Governance Committee Charter, members of the Governance Committee are charged with adopting policies designed to encourage the highest levels of corporate conduct by the Board, the Company and its officers, employees and agents. Defendants Perry and Tokarz breached their fiduciary duties of due care, loyalty, and good faith because the Governance Committee permitted the pervasive misconduct described above to go undisclosed. Therefore, defendants Perry and Tokarz face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile;

227.h. Defendants Tokarz, Perry, and James are interested as a result of their conduct on the Compensation Committee. Pursuant to the Company's Compensation Committee Charter, directors on the Compensation Committee are responsible for, inter alia, reviewing and approving the compensation of the Company's senior officers in conduction with previously established performance metrics. Defendants Tokarz, Perry, and James breached their fiduciary duties of due care, loyalty, and good faith, because the Compensation Committee, inter alia, awarded the above-discussed compensation based on admittedly false financial results as evidenced by the Company's need for a restatement. Further, the Compensation Committee has done nothing to rectify its above failures.

22

> Therefore, defendants Tokarz, Perry, and James (if not the entire Board) each face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile[.]

Id. at 106-08. Even if we were to conclude that the detailed factual allegations preceding paragraph 227 in the Amended Complaint support Carter's contention that the named Directors breached their respective Committee duties, Carter has not alleged with particularity facts to show that the named Directors faced a substantial likelihood of liability as a result of such breaches. Therefore, Carter has failed in these sub-paragraphs to show that demand is excused under Rales.[5]

In sum, the Amended Complaint does not include particularized factual allegations that would create a reasonable doubt as to whether a majority of the Director Defendants could have properly exercised their disinterested business judgment in responding to a demand. See Rales, 634 A.2d at 935. Nor do the allegations show that the Director Defendants face a substantial likelihood of liability for the inadequate conduct set out in the Amended Complaint. See id. As such, Carter has not shown that demand was excused under Rales.[6]

---

[5] Carter makes a final allegation regarding demand, namely that demand is excused as to Prieur because Prieur, as a CEO of the Company, is not independent. Defendants concede that Prieur is not independent. We conclude that Carter has not shown that any other Directors are interested or not independent, and demand could not be excused based solely on Prieur not being an independent director.

[6] In their briefs and at oral argument, the parties also debated whether the Amended Complaint states oversight claims under In re Caremark International Inc. Derivative Litigation, 698 A.2d 959 (Del. Ch. 1996). Oversight or Caremark claims arise where a claim is not based on a particular transaction or decision but, instead, on an "unconsidered failure of the board to act in circumstances in which due attention would, arguably, have prevented the loss." Caremark, 698 A.2d at 967. Caremark claims must satisfy an even higher burden for demand to be excused, namely, "(1) that the directors knew or (2) should have known that violations of law were occurring and, in either event, (3) that the directors took no steps in a good faith effort to prevent or remedy that situation, and (4) that such failure proximately resulted in the losses complained of[.]" Id. at 971. But the Rales test also applies to Caremark claims. Wood v. Baum, 953 A.2d 136, 140 (Del. 2008). Because we conclude that Carter's Amended Complaint

23

**Issue Two:  Exculpatory Provision**

Carter also contends that the trial court erred "by even considering, much less relying on, CNO's exculpatory provision in granting the motion" to dismiss.  Appellant's Brief at 39.  As discussed below, where a corporate charter contains an exculpatory provision, a derivative action plaintiff faces a higher and slightly different burden to avoid demand than under the <u>Rales</u> test.  Carter argues that the burden imposed by the inclusion of an exculpatory provision in a corporate charter does not apply at the motion to dismiss stage and, even if that higher burden may be considered, that he has met that burden.  Assuming for the sake of argument that the exculpatory provision applies to the claims in the Amended Complaint, we consider whether the Amended Complaint alleges particularized facts to show that demand would have been futile under the higher and slightly different standard that arises under CNO's exculpatory clause.[7]

CNO's certificate of incorporation contains an exculpatory provision provided for in Delaware Code title 8, section 102(b)(7).[8]  In such cases, director defendants are "exculpate[d] from personal liability for violations of fiduciary duty, except for, among

has not satisfied the <u>Rales</u> test for excusing demand, we need not consider whether the allegations in the Amended Complaint satisfy the even higher demand futility burden imposed on oversight claims.

[7] If we were to conclude that Carter's Amended Complaint asserts claims that are not subject to the higher pleading burden under the exculpatory clause, we would be left to evaluate his claims under <u>Rales</u>.  We have already determined that Carter has not shown that demand was futile under <u>Rales</u>.

[8] Delaware Code title 8, section 102(b)(7) provides, in relevant part, that a certificate of incorporation may include

> [a] provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director:  (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; . . or (iv) for any transaction from which the director derived an improper personal benefit. . . . .

24

other things, breaches of the duty of loyalty or actions or omissions not in good faith or that involve intentional misconduct or a knowing violation of the law." In re Citigroup Inc. S'holder Derivative Litig., 964 A.2d 106, 124 (Del. Ch. 2009). "Such a provision can exculpate directors from monetary liability for a breach of the duty of care, but not for conduct that is not in good faith or a breach of the duty of loyalty." Stone, 911 A.2d at 367. Where, as here, a corporation has included a § 102(b)(7) exculpatory clause in the certificate of incorporation, "a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors based on particularized facts." In re Citigroup, 964 A.2d at 124. "[T]he risk of liability does not disable [directors] from considering a demand unless particularized pleading permits the court to conclude that there is a substantial likelihood that the directors' conduct falls outside the liability exemption." Welch, supra, § 327.4.2.4.2, at GCL-XIII-94.

The standard for assessing oversight liability under Caremark and the standard for assessing a disinterested director's decision under the duty of care when the company has adopted a § 102(b)(7) exculpatory provision are similar. Id. at 125.

> In either case, a plaintiff can show that the director defendants will be liable if their acts or omissions constitute bad faith. A plaintiff can show bad faith conduct by, for example, properly alleging particularized facts that show that a director consciously disregarded an obligation to be reasonably informed about the business and its risks or consciously disregarded the duty to monitor and oversee the business."

Id. That is to say, if, after applying the Rales test a court determines that "'a majority of the board is impartial . . . ,' the court must then 'consider whether the complaint sets forth particularized facts that plead a non-exculpated claim of breach of fiduciary duty against a majority of the board, thereby stripping away their first-blush veneer of impartiality.'"

25

King v. Baldino, 648 F. Supp. 2d 609, 617 (citing Guttman v. Huang, 823 A.2d 492, 501 (Del. Ch. 2003)) (footnote omitted). In Issue One above, we applied the Rales test and determined that Carter has not shown a reasonable likelihood that the Director Defendants were interested. Next we must consider whether Carter has shown the lack of impartiality by demonstrating that the Director Defendants' conduct constituted a breach of the duty of good faith or loyalty.

We first observe that Carter's entire analysis regarding his burden in light of the exculpatory clause is found in only two paragraphs of his Appellant's Brief. And those paragraphs contain absolutely no citations to the record to point out which claims support the argument. We remind counsel that analysis of an issue on appeal must be supported in relevant part by citations to the Appendix or parts of the Record on Appeal relied on, and failure to do so can result in waiver. Ind. Appellate Rule 46(A)(8)(a). And we will not search the record to find a basis for a party's argument. Nealy v. Am. Family Mut. Ins., 910 N.E.2d 842, 845 n.2 (Ind. Ct. App. 2009), trans. denied. Waiver notwithstanding, we exercise our discretion to consider the merits of Carter's Section 102(b)(7) claim.

Carter contends that "Section 102(b)(7) does not shield Defendants from liability where, as here, there are allegations of a conscious disregard of one's responsibilities and other serious internal control deficiencies." Appellant's Brief at 42. Paragraphs 224 through 227 of the Amended Complaint pertain to Carter's demand allegations, although the detailed supporting factual allegations are found elsewhere in the complaint. In the

demand allegations Carter alleges the following breaches of duty relevant to his claim that demand was excused notwithstanding the exculpatory provision:

1. "Despite clearly being placed on notice of serious issues regarding LTC which were causing the Company's reserves to be inadequately set, defendants Hilliard, Schneider, Tokarz, Perry, and Turner consciously disregarded their fiduciary duties to CNO when, under their direction, the Company's ongoing LTC issues were not addressed and the Company continued to inadequately set reserves over a multi-year period." (¶ 227.a.)

2. "[T]he Board failed to exercise its good faith judgment to ensure that the Company's information and reporting system was in concept and design adequate to assure the Board that appropriate information will come to its attention in a timely manner and as a matter of ordinary operations." (¶ 227.c.)

3. "[T]he Board intentionally misled the Multistate Examiners or permitted others to do so, thus clearly illustrating their hostility to the relief sought in this action." (¶ 227.d.)

4. Members of the Audit Committee "breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee permitted the above false and misleading statements to be made, which eventually led to a [financial] restatement." (¶ 227.f.)

5. Members of the Governance Committee "breached their fiduciary duties of due care, loyalty, and goof faith, because the Governance Committee permitted the pervasive misconduct described above to go undisclosed." (¶ 227.g.)

6. Members of the Compensation Committee "breached their fiduciary duties of due care, loyalty, and goof faith, because the Compensation Committee, inter alia, awarded . . . compensation based on admittedly false financial results as evidenced by the Company's need for a restatement" and "has done nothing to rectify its [stated] failures." (¶ 227.h.)

Appellant's App. at 104-08.

We assume without holding that the paragraphs quoted immediately above allege bad faith by the conscious disregard of duties, the failure to exercise good faith, the intentional misleading of the Multistate Examiners, and the breach of the duty of good

27

faith constitutes bad faith. But, as we determined in Issue One above, Carter has not alleged with particularity facts to show that the Directors consciously disregarded or breached their duties to the corporation, failed to exercise good faith judgment, or misled the Multistate Examiners. Indeed, Carter acknowledges in the Amended Complaint that the Director Defendants were aware of the problems in the LTC segment, including the reserves inadequacies, data integrity problems, and lack of policy records. He also acknowledges that the Director Defendants met quarterly in "War Room" meetings to address those issues from 2003, increased the frequency of those meetings in 2005, and attempted to remedy some of the problems by hiring consultants and implementing various new internal procedures. And in 2005 CNO's quarterly financial filing with the Securities and Exchange Commission disclosed that the LTC segment's losses had been larger than expected. Starting in 2006, CNO issued press releases disclosing problems in the LTC segment and that those problems had affected the company's overall financial performance.[9]

Carter has not made particularized factual allegations to support his conclusion that Director Defendants knew or should have known the exact extent of the problems in the LTC segment. Nor has he made particularized factual allegations to show that they

---

[9] In Plumbers & Pipefitters Local Union No. 719 Pension Trust Fund v. Conseco, Inc., 2011 WL 1198712, at *60-*61 (S.D. N.Y.), the district court found that Conseco had made "extensive disclosures" from which the

> most compelling inference is that the [Conseco officers] actively and diligently sought to apprise the market of information relevant to Conseco's corporate prospects, and the risks and prospects of the LTC business and the challenges it faced, particularly with respect to reserves. The most compelling inference, in the face of the extensive negative information that was disclosed, is that the defendants were unaware of any more severe material adverse information[] and that much of what the plaintiff calls inadequate disclosures are simply pejorative characterizations of what was disclosed.

hid the fact or extent of those problems from the internal auditors, the Multistate Examiners, or the public. The facts as alleged in the Amended Complaint point in the opposite direction. Therefore, we conclude that Carter's Amended Complaint does not include particularized facts to support his allegations that the Director Defendants acted in bad faith in their capacity as members of CNO's board of directors.

## Conclusion

Pre-suit demand on a board of directors is a prerequisite to filing a derivative action. Here, to show that demand on the Director Defendants would have been futile, the Amended Complaint must allege with particularity facts to show either that the directors could not have made a disinterested decision upon demand or that they faced a substantial likelihood of liability for their conduct as board members. The Amended Complaint contains only conclusory allegations on these points. Carter also could have avoided demand by showing that the Director Defendants had breached their duties of good faith or loyalty. Again, the Amended Complaint falls short, failing to allege with particularity facts to show such breaches. Therefore, again, Carter has not shown that demand would have been futile. As such, the trial court did not err when it granted Defendants' motion to dismiss for failure to make pre-suit demand.

Affirmed.

BAKER, J., and VAIDIK, J., concur.